```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CHRISTOPHER PEREZ,

                    Petitioner,
                                          MEMORANDUM AND ORDER
         - against -
                                           14 Civ. 846 (NRB)
UNITED STATES OF AMERICA,                  04 Cr. 937-1 (NRB)

                    Respondent.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Christopher Perez pleaded guilty to murder while engaged in a narcotics conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A), and was sentenced principally to 360 months' imprisonment. Now proceeding pro se, Perez has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, on a ground that he characterizes as "actual innocence." For the following reasons, the petition is denied, as are several related motions in Perez's criminal case.

## I. BACKGROUND

**A. The Charges Against Perez**

On March 1, 2009, a grand jury returned a fifth superseding indictment against Perez (the "Superseding Indictment") in two counts. Count One charged Perez and others with violating 21 U.S.C. § 846 by conspiring to distribute and possess with intent to distribute cocaine. Count Two charged Perez with violating

21 U.S.C. § 848(e)(1)(A) by unlawfully, intentionally and knowingly killing and causing the intentional killing of Miguel Angel Chaidez-Esparza while engaging in the Count One conspiracy.

**B.   Perez's Guilty Plea**

Perez appeared before this Court on April 15, 2009, to plead guilty to Count Two of the Superseding Indictment.  (Count One was dismissed on the government's motion.)  In his plea allocution, Perez told the Court:

> During the time period in the indictment, I was involved with others in transaction -- transportation and distribution of cocaine, mainly in the Midwestern United States.  I caused deliveries of cocaine to be made and was paid by the kilo, but I never got out of debt for the drugs.
>
> I owed large amounts of money -- money to cocaine exporters from Mexico.  I was actually kidnapped, tortured and beaten badly in 2004 when I could not pay the debts.
>
> One of the people I worked with was John Benson, a California lawyer, in Rancho Cucamonga, California, whom I found out, after my arrest, was cooperating with the United States government. . . .
>
> After I was released by the kidnappers, some time passed before Benson told me that one of the people I worked with, a man I knew as Amigo, who also owed money to the Mexican cartel, needed to be picked up. I knew that "picked up" means . . . doing serious harm to Amigo, or doing what was necessary to get the money, it could have been death. . . .
>
> So in August 2004, I arranged to meet with Amigo at a mall in Michigan.  This was my part in picking

>him up.  In the car with me were about four men who were working for another cocaine trafficker. . . .
>
>I left them with Amigo. . . .
>
>I did not see any murder take place that night. The next day I learned that Amigo was killed.
>
>I regret my -- I regret my part in causing this, in causing someone to be killed by those people.  I'm ashamed of it.  I can't change what I did, and I'm sorry for it.

Transcript of April 15, 2009, change of plea hearing ("Tr.") at 12-14.  "Amigo" was ultimately identified by his dental records and fingerprints as Chaidez-Esparza, the victim of the Count Two crime.  Tr. 14-15.  At the change of plea hearing, Perez stated that, when he delivered Chaidez-Esparza to the men in the car, "I knew they were going to kill him."  Tr. 21.

At the same hearing, the government proffered that, if the case were to proceed to trial, it would introduce a videotape recording of a conversation in which Perez told Benson (the lawyer informant) that, Perez himself had personally killed Chaidez-Esparza.  In the government's words, Perez "admitted to the informant that he had suffocated the victim with his own hands, that he had taped his head so that he couldn't breathe, and that he had burned the body after the victim had died."  Tr. 16.  Although Perez's counsel did not admit the truth of Perez's videotaped admission, counsel conceded that Perez had made the statement:  "We do not disagree that those words were uttered on a tape recording in the lawyer's office to the lawyer."  Id.

Perez's guilty plea was made pursuant to a written plea agreement, which he signed after reading it and reviewing it with his lawyers.  See Tr. 8-9; Letter of Assistant United States Attorney Samson Enzer, Esq., dated May 22, 2014 ("Gov't Ltr."), at 1-2.  The plea agreement provided, in relevant part:

> It is agreed . . . that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range (360 months to life imprisonment) . . . .

Plea agreement dated April 14, 2009, at 3.[1]  At the April 15, 2009 hearing, the Court asked Perez if he understood that "if you're sentenced within the guidelines range that's been stipulated to that you will not file either a direct appeal or otherwise challenge the sentence?"  Tr. 10.  Perez responded: "Yes, I understand."  Id.

The Court also asked Perez: "[A]re you pleading guilty because you are in fact guilty?"  Tr. 11.  Perez responded: "Yes ma'am."  Id.  The Court, "satisfied that [Perez] underst[ood] the nature of the charge against [him] and the consequences of [his] plea and that [his] plea [was] made voluntarily and knowingly and that there is a factual basis for it," accepted the guilty plea.  Tr. 22.

---

[1] The government represents that "[n]either [it] nor Perez's counsel have been able to locate the copy of the Plea Agreement that Perez signed at his guilty plea hearing."  Gov't Ltr. 2 n.1.  The Court, however, has located a signed original in its chambers file, which is included as an appendix to this Memorandum and Order.

4

On December 9, 2009, the Court sentenced Perez principally to 360 months' imprisonment.  Perez did not appeal.

**C.   Perez's 28 U.S.C. § 2255 Petition**

On January 24, 2014, Perez submitted the instant 28 U.S.C. § 2255 petition.  On March 6, 2014, the Court directed Perez to file an affirmation showing cause why the petition should not be dismissed as time-barred.  Perez subsequently submitted an undated affirmation in response, which was filed on March 18, 2014.  On April 7, 2014, the Court ordered the Government to respond to Perez's petition.  On May 22, 2014, the government filed its response.  Perez submitted a reply on June 17, 2014.

Perez also submitted a letter, dated June 10, 2014, requesting a certificate of appealability if his petition is denied.  As discussed in Part II.C below, Perez has also filed several related motions in his criminal case.

## II. DISCUSSION

We construe the pro se pleadings in support of Perez's petition liberally.  Nonetheless, the petition lacks merit because Perez, in his plea agreement, waived his right to bring a § 2255 petition, and, even if he had not, that petition would be time-barred.  Moreover, Perez has not offered even a colorable showing of actual innocence.

5

**A. Waiver**

Perez, in his plea agreement, waived his right to collaterally challenge his conviction pursuant to 28 U.S.C. § 2255. "A defendant's knowing and voluntary waiver of his right to bring a petition pursuant to section 2255 is generally enforceable." Muniz v. United States, 360 F. Supp. 2d 574, 576 (S.D.N.Y. 2005); see, e.g., Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001); Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002). For instance, in Garcia-Santos, the petitioner made a § 2255 motion "attacking his conviction on numerous grounds" in the face of a valid plea agreement that contained a waiver of the inmate's appeal and collateral-challenge rights; the terms of the waiver were materially identical to those in Perez's plea agreement. 273 F.3d at 507-08. The Court of Appeals enforced the waiver. See id. at 509.

Although "a waiver of . . . collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured," Frederick, 308 F.3d at 195, here, Perez candidly acknowledges that his plea was knowing and voluntary. See Perez's reply brief at 1 ("Was this plae [sic] agreement knowingly and voluntarily? Petitioner states yes with

the facts that were presented to him at that time.").
Accordingly, Perez's § 2255 waiver must be enforced.

**B.      Statute of Limitations**

Even if Perez had not waived his right to bring a § 2255 petition, his petition would be time-barred. Under the statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a § 2255 petition ordinarily must be brought within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). For this purpose, an unappealed conviction becomes final "when the time for filing a direct appeal expires." Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). Perez's judgment of conviction was entered on December 11, 2009, and became final when the time for appeal expired on December 28, 2009. See Fed. R. App. P. 4(b). Perez's petition, which he mailed from prison on January 24, 2014, came more than three years too late.

In an attempt to rescue his petition from its untimeliness, however, Perez relies on two exceptions to AEDPA's one-year limitations period, namely the doctrines of equitable tolling and actual innocence. Neither is availing.

A petitioner is entitled to equitable tolling of AEDPA's limitations period only if he shows, inter alia, "that he acted with reasonable diligence throughout the period he seeks to

7

toll." Harper v. Ercole, 648 F.3d 132, 138 (2d Cir. 2011) (internal quotation marks omitted); see Holland v. Florida, 560 U.S. 631, 649 (2010).  In support of equitable tolling, Perez relies on difficulty obtaining his case file following a June 14, 2012 request made to his former counsel.  Even assuming that such difficulty might present the sort of "extraordinary circumstance," id., that could justify equitable tolling, it fails to indicate that Perez exercised reasonable diligence before his time to file a § 2255 petition expired in 2010. Thus, Perez is not entitled to equitable tolling of the limitations period.

Nor is Perez entitled to avoid the statute of limitations on the basis of actual innocence.  An actual-innocence claim may permit a petitioner to avoid the statute of limitations in the "rare" case where the petitioner proves actual innocence by "'persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  "'Actual innocence' means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998); see, e.g., Rosario v. United States, 164 F.3d 729, 733 (2d Cir. 1998).

Although Perez describes his case as one of "actual innocence," his contentions boil down to two claims, neither of which has anything to do with factual innocence. First, Perez argues that venue was improper in the Southern District of New York because Chaidez-Esparza was murdered in Michigan, not New York. This argument is legally unsound. Venue for a prosecution under 21 U.S.C. § 848(e)(1)(A) for murder while engaged in narcotics conspiracy is proper in a judicial district in which overt acts in furtherance of the underlying narcotics conspiracy took place, even if the killing itself took place outside the district. See United States v. Smith, 452 F.3d 323, 335 (4th Cir. 2006); United States v. Gotti, 660 F. Supp. 2d 512 (S.D.N.Y. 2009). As the government proffered at the change of plea hearing, "shipments by other members of this organization were sent to New York City and through the Southern District [of New York], as alleged in [Count One of the Superseding Indictment]." Tr. 15. Thus, venue in this district, which was not challenged at the time of the guilty plea, was proper.[2]

Second, Perez argues that "someone else committed the actual drug murders in question." Petitioner's Affirmation of Timeliness at 7. But the offense of which Perez was convicted does not only forbid "intentionally kill[ing]"; it also outlaws

---

[2]   Perez also broadly challenges the Court's "jurisdiction" over his criminal case. However, the substance of his argument relates to venue, and we see no other basis upon which to doubt the Court's jurisdiction.

9

"caus[ing] the intentional killing of an individual." 21 U.S.C. § 848(e)(1)(A).  The Court need not speculate as to whether Perez, as he admitted on videotape, killed Chaidez-Esparaza with his own hands.  Perez does not argue -- nor is there any basis to conclude -- that Perez did anything less than, as he admitted in court, to deliver Chaidez-Esparza to his killers to be killed.  Thus, there is no basis to conclude that Perez is actually innocent of the crime for which he was convicted.

**C.   Perez's Other Motions**

Perez has filed several motions for "discovery" and to unseal court records in support of this petition.  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Instead, discovery must be predicated upon a showing of "good cause."  Rule 6(a), Rules Governing Section 2255 Proceedings for the U.S. District Courts; see Drake v. Portuondo, 321 F.3d 338, 345-46 (2d Cir. 2003).  Because it is clear from the legal insufficiency of Perez's arguments that further development of the facts would not enable Perez to demonstrate entitlement to relief, the request for discovery is denied.[3]  Additionally, because this

---

[3]   Moreover, to the extent that Perez seeks the Court's assistance in obtaining his case file from his former counsel, the Court has already acted

case involves numerous defendants, Perez's applications to unseal documents are denied.

## CONCLUSION

For the foregoing reasons, Perez's § 2255 petition is denied, and his recent motions in his criminal case (Docs. 186, 188, 191, and 205) are also denied. As Perez has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this Memorandum and Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated:    New York, New York
          May 27, 2015

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

as explained in our Memoranda and Orders of March 19, 2013, and January 8, 2014.

11

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Petitioner**

Christopher Perez
Reg. No. 39347-198
FCI Ray Brook
P.O. Box 900
Ray Brook, NY 12977

**Attorney for the Government**

Samson Enzer, Esq.
Office of the United States Attorney
One St. Andrew's Plaza
New York, NY 10007

# APPENDIX

(Perez's Signed Plea Agreement)



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 14, 2009

George R. Goltzer, Esq.
200 West 57th Street, Suite 900
New York, New York 10019
(212) 608-1260
george@goltzer.com

        Re:    United States v. Christopher P. Perez, a/k/a "Cross"
                 S5 04 Cr. 937 (NRB)

Dear Mr. Goltzer:

       On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Christopher P. Perez, the defendant ("the defendant"), to Count Two of the above-referenced Indictment.

       Count Two charges the defendant with murder while engaged in a narcotics conspiracy, in violation of Title 21, United States Code, Section 848(e). Count Two carries a maximum sentence of life imprisonment, a mandatory minimum sentence of twenty years' imprisonment, a maximum fine of the greatest of $2,000,000 or, pursuant to Title 18, United States Code, Section 3571, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; a maximum term of supervised release of life; and a $100 special assessment.

       In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for the murder by suffocation of Miguel Angel Chaidez-Esparza on or about August 23, 2004, while engaged in a cocaine distribution conspiracy, as charged in Count Two of the Indictment; or his participation in a conspiracy to distribute cocaine between June 2004 and September 2004, as charged in Count One of the Indictment. In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

       In consideration of the foregoing and pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Sentencing Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

George Goltzer, Esq.
April 14, 2009
Page 2

A.     Offense Level

    1.     Pursuant to U.S.S.G. § 2A1.1, because the offense of conviction constitutes murder in the first degree, the defendant's base offense level is 43.

    2.     Because the offense of conviction involved the restraint of the victim, who was kidnaped and restrained prior to being murdered, the offense level is increased by two levels pursuant to U.S.S.G. § 3A1.3.

    3.     Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to § 3E1.1(a), U.S.S.G. Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1-level reduction is warranted, pursuant to § 3E1.1(b), U.S.S.G, because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 42.

B.     Criminal History Category

In or about 1993, in the United States District Court for the Central District of California, Perez was convicted upon a plea of guilty of the offense of possession of marijuana, in violation of Title 21, United States Code, Section 844(a), and sentenced to a term of 3 years' probation, and a $1,000 fine. Pursuant to U.S.S.G. § 4A1.2(E), this conviction and sentence results in zero criminal history points.

Accordingly, the defendant's Criminal History Category is I.

C.     Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated sentencing Guidelines range is 360 months to life imprisonment (the "Stipulated Guidelines Range"). Title 21, United States Code, Section 848(e) requires a mandatory minimum sentence of 20 years' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to §5E1.2. At Guidelines level 42, the applicable fine range is $25,000 to $2,000,000.

The parties further agree that a sentence within the Stipulated Guidelines Range (360 months to life imprisonment) would constitute a reasonable sentence in light of all of the factors set forth

George Goltzer, Esq.
April 14, 2009
Page 3

in Title 18, United States Code, Section 3553(a). In addition, neither party will seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range, or suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range.

Nothing in this agreement limits the right of the parties (i) to present to the Probation Department or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (360 months to life imprisonment) (or such other range as the Court may determine) the defendant should be sentenced; (iii) to seek an appropriately adjusted Sentencing range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above. Nothing in this agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. §3E1.1, and/or imposition of an adjustment for obstruction of justice, *see* U.S.S.G. §3C1.1, regardless of any stipulation set forth above, should the defendant move to withdraw his guilty plea once it is entered, or should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this agreement.

It is understood that pursuant to Sentencing Guidelines §6B1.4(d), neither the Probation Department nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Department or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Stipulated Guidelines Range (360 months to life imprisonment) set forth above.

It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range (360 months to life imprisonment) set forth above and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. It is further agreed that any sentence within the Stipulated Guidelines range is reasonable. This provision is binding on

3

George Goltzer, Esq.
April 14, 2009
Page 4

the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

By entering this plea of guilty, the defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. The defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction and sentence.

It is further agreed that should the conviction following defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

4

George Goltzer, Esq.
April 14, 2009
Page 5

      This Agreement supersedes any prior understandings, promises, or conditions between this Office and defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

                                          Very truly yours,

                                          LEV L. DASSIN
                                          United States Attorney

By:      _____
         Todd W. Blanche
         Assistant United States Attorney
         (212) 637-2494

APPROVED:

_____
Anirudh Bansal
Chief, International Narcotics Trafficking Unit

AGREED AND CONSENTED TO:

_____        _____
Christopher P. Perez                             DATE

APPROVED:

_____        4/15/09
George R. Goltzer, Esq. / Joel Drapace    DATE
Attorney for Christopher P. Perez

5